## Abrams, Appellant, *v.* Sherwin.

*Mines and mining—Real estate—Right to dump waste material—
Contracts—Construction of contracts.*

In an action of assumpsit for a breach of contract, it appeared
that the plaintiff had entered into a contract with the defendant,
whereby the latter was permitted to dump waste material from
his mine on the property of the former. The agreement provided
that at the termination of the lease the defendant would remove his
trestle, railroad and all his property, "leaving the land in the same
condition as when he first entered upon it." On a suit, following
the refusal of the defendant to comply with the terms of an agree-
ment, evidence was admitted as to the amount which the defendant's
successor would charge for removing the material.

In such case, the admission of such testimony was improper and
constituted reversible error.

Defendant, having been required under the contract to remove
the material, could not be allowed to testify as to what he was
willing to accept to restore the land to its original condition. Having
accepted the provisions of the contract, he could not shift the respon-
sibility on the plaintiff by saying that he would perform his obliga-
tion if he was paid for it. The measure of damages was the reason-
able cost of carrying out the defendant's contract, and it was error
on the part of the Court to admit the evidence objected to for the
purpose of fixing the damages.

Argued April 22, 1925. Appeal No. 47, April T.,
1925, by plaintiff from judgment of C. P. Butler
County, September T., 1924, No. 53, in the case of
E. E. Abrams v. P. D. Sherwin. Before HENDERSON,
TREXLER, KELLER, LINN and GAWTHROP, JJ. Re-
versed.

Assumpsit for breach of contract. Before REIBER,
P. J.

The facts are stated in the opinion of the Superior
Court.

Verdict for plaintiff in the sum of $500.00 on which
judgment was entered. Plaintiff appealed.

*Errors assigned* were various rulings on evidence,
refusal to withdraw a juror because of improper re-

marks of counsel, the charge of the Court, and refusal to grant a new trial.

*James E. Marshall* of Marshall & Watson, and with him *Zeno F. Henninger,* for appellant.

*James B. Galbreath,* and with him *Howard I. Painter,* for appellee.

Opinion by Henderson, J., July 19, 1925:

The defendant, desiring to increase the efficiency of his mining operation, entered into an agreement with the plaintiff who owned an adjoining farm by which the defendant was authorized to deposit earth, rock, cinder and other waste of the mine on a part of the farm. Pursuant to this agreement, through the course of years, there was removed from the mine and placed on the plainant's land a large body of such waste in the form of a bank or dyke, having a height at one end of about two feet and at the other of about fifteen or sixteen feet, with a width at the base of about thirty-five feet, more or less, and a length of about six hundred feet. In this bank were piles or timbers used to support the track on which cars were operated to carry the material to the place where it was deposited. The ground was leased by the plaintiff to the defendant and the term extended from time to time. The agreement provided that at the termination of the lease, the defendant would remove his trestle, railroad and all his property "leaving the land in the same condition as when he first entered upon it." The defendant denied in the affidavit of defense that he had made any such contract, but at the trial this defense was abandoned, and the only question presented for consideration was the amount of damage to which the plaintiff was entitled because of the refusal of the defendant to perform his contract. It was in evidence that the defendant

sold out his mining operation to his son, Samuel Sherwin, who carried it on for some years and during that period used the plaintiff's land under the lease as his father had done. The son testified that he bought out his father; that he was the real defendant, and that was the reason he was defending the suit. After the plaintiff had offered his agreement with the defendant and proved the quantity of material which had been left on his premises and the reasonable cost of removing it, Samuel Sherwin, the son, was called for the defense and testified under objection, in part as follows:

"Q.   You may state Mr. Sherwin how much money you will take and remove the fill from the lease?

"A.   $300."

The admission of this evidence is the subject of the first assignment of error. The action is assumpsit. What the plaintiff undertook to do after proving the contract was to show the cost of getting that done which the defendant had promised to do without cost. We held in Snyder v. Bassler Limestone Co., 66 Pa. Superior Ct. 5, which was a case involving the removal of earth that where there has been a breach of contract to perform a specific work, the plaintiff is entitled to recover what it would reasonably cost to do the thing contracted for or to restore the property to its original condition, a statement of law supported by numerous decisions among which are McDowell's App., 123 Pa. 381; Taber v. Porter-Gildersleeve Co., 271 Pa. 245; in the latter of which cases the ruling in Snyder v. Bassler, supra, was approved. The witness called was on his own admission an interested party and liable for the performance of the work which his father, the defendant, had assumed. The proposal in the evidence was not to remove the embankment according to the agreement without charge to the plaintiff, but to do it for a consideration of $300. Of course if the witness were bound to remove it for nothing

he could well say that he was willing to do it for $300. The proposition is that the plaintiff shall be bound to accept the overture of the defendant and trust him to do the work and thereby fix the measure of damages resulting from the default of the defendant and of the son to carry out the contract. We think the standard of liability is not to be fixed that way. The obligation being recognized, the offer could, with equal propriety, have been made to do the work for $200 or $100. The defendant was of course not entitled to compensation for removing the earth, nor if the son was the actual defendant is he in a better situation. The contract is clear as to the duty of the defendant; he was to remove the material which for his own convenience had been put on the plaintiff's land. Having accepted the privilege for years, he cannot now shift the responsibility on the plaintiff by saying he will perform his obligation if he is paid for it. The question was what would be the reasonable cost of carrying out the defendant's contract? The testimony was not to that effect, but was merely the inquiry what are you willing to do it for? It can be seen at once that if the verdict is to go in accordance with this evidence, the plaintiff's recovery would be limited to the sum named by the witness, but the verdict does not remove the material. The plaintiff must find someone who will take it away at such price as can be agreed on. It is not an answer to this to say that the witness agreed to give security to do the work. The defendant had already given security to that effect by the covenant in his contract, but neither he nor the son who had assumed his burden could be moved to carry out the agreement, hence this litigation. There was no power in the court or the plaintiff to compel the son to enter into a contract to remove the earth for the sum named, and if there had been an agreement, it was subject to violation as was the agreement on which the action is planted. It was error therefore on the

part of the court to admit the evidence objected to for the purpose of fixing the measure of damages. The first assignment is sustained.

In the second assignment exception is taken to the admission of evidence that if the earth to be removed were scattered over the plaintiff's land adjoining, it would fill a depression, and that if the fill were scattered around it would make the ball ground better. This evidence was apparently introduced to prove that it would be to the advantage of the plaintiff to have the stones and clay distributed over his land on some theory that he could not assert a right to have the thing done with respect to his property which he wished to have done and which the defendant had agreed to do for a consideration theretofore supplied by the plaintiff. We think it is not within the power of the court or jury to modify the contract between the parties in relief of the defendant. The clear terms of the agreement were notice to him that when he put the material from his own land onto the plaintiff's, it would be his duty at a later time to remove it and no reason appears why the contract should not be carried out if the plaintiff desires that to be done. It is clear that at the time the first agreement was entered into between him and the defendant, he did not wish his land to be permanently encumbered by an unsightly and obstructive body of material from the defendant's coal bank, and he evidently is in the same state of mind now. It was not an answer to his demand therefore that instead of having this material removed, he should distribute it over that portion of his farm. The second assignment is sustained.

Other errors are alleged growing out of the refusal of the court to withdraw a juror and continue the case because of unwarranted statements of the defendant's counsel made during the progress of the trial and in the address to the jury. Some of these were open to criticism and were well calcuated to prejudice the jury

against the plaintiff.   It is unnecessary to consider them however in view of the fact that the case must go back for retrial and the recurrence of the objectionable remarks will probably not take place.

The judgment is reversed with a venire facias de novo.